## BOGARTH vs. CALDWELL COUNTY.

A purchaser of school lands, cannot be relieved in equity against the payment of a bond given for the purchase money, on the ground that a majority of the householders of the township did not petition the county court for a sale of the land—nor because sixty days notice of the sale was not given.

### APPEAL from Caldwell.

KITRLEY & REED, for the Plaintiff in error.

It is insisted by the counsel for complainant, (Bogarth,) that the circuit court did err in dismissing said bill ;

*First,* Because he could not have adequate remedy elsewhere.

*Second,* Because, when said complainant bought said land and executed said bond, it was with the understanding that said sale was in all things legal, and that the sale would be valid to convey to the purchaser a *bona fide title.*

*Third,* Because, inasmuch (according to the tenor of said bill,) said sale was illegal as above stated, it would be contrary to equity and good conscience to compel said complainant to pay said demand, and would inflict on him an irreparable injury, and because the circuit court sustained the demurrer, when there was equity abundantly set out on the face of the same. See Digest of 1835, p. 562, sec. 1; Story Equity, 2d vol. p. 166, 172.

SCOTT, J., delivered the opinion of the Court.

This was a bill filed by Bogarth for an injunction and for relief against a judgment obtained on a bond given by him for a portion of one of the sixteenth sections in the county of Caldwell. The alleged grounds for relief, are, that the sale was illegal: that a majority of the householders of the township did not sign the petition to the county court, for a sale of the 16th section, a portion of which he became the purchaser, and for which the bond was given on which the judgment was rendered against which relief is sought; that the sale was not advertised sixty days. It is further alleged as a ground of relief, that the land purchased was situated in the county formerly inhabited by the Mormons, and in consequence of their expulsion by the authority of the State, the land purchased has been greatly reduced in value. On a demurrer to this bill it was dismissed, and the cause is brought to this court.

The allowance of a defence of this character to a purchaser of the school lands, would be attended with the most disastrous consequences. The party has all he acquired by the purchase, is in the uninterrupted possession of the land, and not threatened with any suit or litigation respecting his title, and yet asks that his agreement may be rescinded, as the sale was not conducted according to law.

Whether sales of the 16th sections are judicial sales, in the sense which would protect purchasers from the consequences of irregulaity in the proceedings of the court ordering them, it is not necessary now to determine. We are not apprised of any principle by which such a proceeding as the present can be sustained. It is not pretended that a knowledge of the illegality of the sale has been acquired since the purchase was made; and even if such a pretence was set up, it is not seen how it could be sustained, as information as to its regularity could have been as easily obtained before as after the sale. The party was willing to embark, according to his own showing, in an illegal speculation, makes a venture, wins a prize, and because it afterwards deteriorates in value, he asks a court of equity to relieve him from the consequences of his own folly. This case, in principle, is the same as that of Brown vs. Crawford county, 8 Mo. R. 640.

The party can scarcely be serious in asking for relief on the ground that his land has been reduced in value in consequence of the expulsion of the people called Mormons, by the authority of the State.

The other Judges concurring, the decree will be affirmed.